No. 25-8018

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

THOMSON REUTERS ENTERPRISE CENTRE GMBH AND
WEST PUBLISHING CORPORATION,

*Plaintiffs-Respondents,*

v.

ROSS INTELLIGENCE INC.,

*Defendant-Petitioner.*

On Appeal from the United States District Court
for the District of Delaware
No. 1:20-cv-00613-SB
Honorable Stephanos Bibas

## OPPOSITION TO PETITION FOR CERTIFICATION
## UNDER 28 U.S.C. § 1292(b)

Miranda D. Means
Kirkland & Ellis LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 385-7500

Dale M. Cendali
Joshua L. Simmons
Kirkland & Ellis LLP
601 Lexington Ave.
New York, NY 10022
Tel: (212) 446-4800

*Attorneys for Plaintiffs-Respondents*
*Thomson Reuters Enterprise Centre GmbH and*
*West Publishing Corporation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1(b), Plaintiffs-Respondents Thomson Reuters Enterprise Centre GmbH ("Thomson Reuters") and West Publishing Corporation ("West," together with Thomson Reuters, "Plaintiffs") certify:

Thomson Reuters Enterprise Centre GmbH is a wholly-owned indirect subsidiary of Thomson Reuters Corporation.

West Publishing Corporation is a wholly-owned indirect subsidiary of Thomson Reuters Corporation.

There is no other publicly held corporation with a financial interest in the outcome of the proceeding.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................ 1

STATEMENT OF THE CASE ................................................................... 4

    I.    ROSS's Copying of Westlaw Content ...................................... 4

    II.   This Lawsuit and Certification ............................................... 6

REASONS TO DENY PERMISSION TO APPEAL.................................. 7

    I.    THE DISTRICT COURT'S SUMMARY JUDGMENT
         ORDER DOES NOT WARRANT AN
         INTERLOCUTORY APPEAL............................................... 7

         A.    ROSS Asks this Court to Answer a Question
             Outside of its Jurisdiction ............................................. 8

         B.    The Order Does Not Involve a "Controlling
             Question of Law"........................................................... 9

         C.    This Case Does Not Implicate Legal Questions on
             Which There is Substantial Ground for Difference
             of Opinion .................................................................... 12

         D.    Immediate Appeal Will Not Materially Advance
             Determination of this Dispute...................................... 20

    II.   ROSS HAS NOT SHOWN EXCEPTIONAL
         CIRCUMSTANCES ............................................................. 24

CONCLUSION ........................................................................................ 25

CERTIFICATE OF COMPLIANCE ....................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ........................................................... 10, 12

*Am. Geophysical Union v. Texaco Inc.*,
802 F. Supp. 1 (S.D.N.Y. 1992) ..................................................... 15, 18

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) ............................................. 3, 15, 16, 17

*In re ASHINC Corp.*,
2017 WL 2774736 (D. Del. June 27, 2017) ........................................ 13

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015) ................................................................ 20

*Averhart v. Commc'ns Workers of Am.*,
2016 WL 1162628 (D.N.J. Mar. 24, 2016) ........................................ 21

*Banks v. Manchester*,
128 U.S. 244 (1888) ............................................................................ 14

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .................................................... 10, 15, 18

*In re Chambers Dev. Co., Inc.*,
148 F.3d 214 (3d Cir. 1998) ................................................................. 7

*Chase Bank, USA N.A. v. Hess*,
2011 WL 4459604 (D. Del. Sept. 26, 2011) ........................................ 8

*In re Del. & Hudson Ry. Co.*,
96 B.R. 469 (D. Del. 1989) ................................................................... 8

*E.E.O.C. v. Hora, Inc.*,
2005 WL 1745450 (E.D. Pa. July 22, 2005) ...................................... 11

*EMSI Acquisition, Inc. v. RSUI Indem. Co.*,
2018 WL 2316633 (D. Del. May 22, 2018) ......................................... 13

*In re Essar Steel Minnesota LLC*,
2025 WL 507914 (D. Del. Feb. 14, 2025).................................... 1, 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ............................................. 3, 13, 14, 15

*Gialde v. Time, Inc.*,
480 F.2d 1295 (8th Cir. 1973) ...................................................... 21

*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021) .................................................................. *passim*

*H. Lundbeck A/S v. Apotex Inc.*,
2019 WL 606466 (D. Del. Nov. 15, 2019) ................................... 11

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ....................................................... 19, 20

*Hulmes v. Honda Motor Co.*,
936 F. Supp. 195 (D.N.J. 1996) ......................................... 13

*Hurst v. City of Dover*,
2006 WL 2347707 (D. Del. Mar. 21, 2006).......................... 13

*Johnson v. Jones*,
515 U.S. 304 (1995) ....................................................... 1, 16

*Katz v. Carte Blanche*,
496 F.2d 747 (3d Cir. 1974) ........................................ 13, 23

*Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*,
217 F.R.D. 235 (D.D.C. 2003) ............................................ 16

*Lenz v. Universal Music Corp.*,
2008 WL 4790669 (N.D. Cal. Oct. 28, 2008) ...................... 17

*Link v. Mercedes-Benz of N. Am., Inc.*,
550 F.2d 860 (3d Cir. 1977) ................................. 1, 7, 10, 23

*Matthew Bender & Co. v. West Publ'g Co.*,
  158 F.3d 674 (2d Cir. 1998) ................................................................. 14

*McCague v. Trilogy Corp.*,
  2007 WL 9811124 (E.D Pa. Apr. 10, 2007) ........................................ 17

*McCoy v. Favata*,
  2020 WL 5891898 (D. Del. Oct. 5, 2020) ............................................ 10

*Milbert v. Bison Lab'ys, Inc.*,
  260 F.2d 431 (3d Cir. 1958) ........................................................ 1, 2, 24

*Moebius v. HB USA Holdings, Inc.*,
  2021 WL 9747608 (C.D. Cal. Sept. 3, 2021) ....................................... 12

*Murphy v. Millennium Radio Grp. LLC*,
  650 F.3d 295, 308 (3d Cir. 2011) ........................................................ 20

*In re Physiotherapy Holdings*,
  2017 WL 6524524 (D. Del. Dec. 21, 2017) ................................... 12, 15

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ............................................................... 13

*Rimini St., Inc. v. Oracle Int'l Corp.*,
  2021 WL 4037482 (D. Nev. Sept. 2, 2021) ......................................... 21

*In re Semcrude, L.P.*,
  2010 WL 4537921 (D. Del. Oct. 26, 2010) ............................................ 7

*Shurance v. Plan. Control Int'l, Inc.*,
  839 F.2d 1347 (9th Cir. 1988) ............................................................. 21

*In re TK Holdings*,
  2021 WL 3796878 (D. Del. Aug. 26, 2021) ................................... 12, 20

*U.S. v. Exide Corp.*
  ˌ 2002 WL 992817 (E.D. Pa. 2002) ..................................................... 21

*In re Venoco, LLC*,
  2019 WL 2117638 (D. Del. May 15, 2019) ..................................... 11, 12

*In re White Beauty View, Inc.,*
  841 F.2d 524 (3d Cir. 1988) ............................................................ 7, 22

*Worth v Selchow & Righter Co.,*
  827 F.2d 569 (9th Cir. 1987) ................................................................ 14

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
  516 U.S. 199 (1996) ................................................................................ 8

## Statutes

28 U.S.C. §1292(b) ............................................................ *passim*

## Other Authorities

Charles A. Wright & Arthur R. Miller,
  Federal Practice and Procedure (3d ed.) ............................................ 23

# INTRODUCTION

ROSS asks this Court to depart from the normal finality rule and permit an interlocutory appeal to review *de novo* the district court's (Bibas, J.) summary judgment order thoughtfully applying well-worn copyright principles to the specific facts of this case. This Court has admonished that §1292(b) "should be sparingly applied" and only "in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation." *Milbert v. Bison Lab'ys, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958). Questions requiring "the application of law to facts" are not appropriate for resolution in this posture. *In re Essar Steel Minnesota LLC*, 2025 WL 507914, at *5 (D. Del. Feb. 14, 2025) (collecting cases) (*citing Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977)). Nor is the "existence, or nonexistence, of a triable issue of fact." *Johnson v. Jones*, 515 U.S. 304, 316 (1995).

Although the district court reasoned that certain technical predicate requirements for §1292(b) appear to be satisfied, the *substance* of the certified questions themselves demonstrates the fact-intensive nature of the issues ROSS asks this Court to decide. Respectfully, permitting ROSS's appeal from a routine summary judgment order applying settled

law—particularly a decision the district court was "confident in"—would "open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation," precisely what this Court has tried to avoid in its careful screening of interlocutory appeals certified by district courts. *Milbert*, 260 F.2d at 433. And, in all events, what ROSS really seeks to pull off is a bait-and-switch: To have this Court make far more determinations than were before the district court. These shifting sands (likely to shift again if certification is granted) are reason enough to deny certification.

ROSS cannot meet *any* of §1292(b)'s three requirements, although *all* must be met. *First*, ROSS does not present an abstract legal question for the Court's expeditious resolution. The two questions ROSS seeks to certify—"1. Do the headnotes fail the Copyright Act's originality requirement because the notes lack 'creative spark'? 2. Is ROSS's use a transformative or otherwise fair use of the headnotes?"—are inherently fact-specific and require reference to the complex record. This first question, for example, would have the Court reviewing thousands of Plaintiffs' headnotes. The second question involves a multi-factor, context-dependent test that ROSS itself spends seven pages of briefing explicating.

**Second**, ROSS cannot show a substantial ground for difference of opinion stemming from doubt as to the correct legal standard. Notwithstanding the district court's modesty, the district court's summary judgment decision does not invite a substantial difference of opinion about copyright law—quite the opposite. The legal standards for originality and fair use are well-developed, and have been the subject of multiple Supreme Court opinions—including recent ones. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 550 (2023); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). What ROSS actually seeks to appeal is the mere *application* of those standards, Pet. 25, which is inappropriate in this posture. This Court would benefit from a full record following trial in which other, overlapping, issues will be resolved—potentially narrowing any ultimate appeal herein.

**Third**, ROSS cannot show an immediate appeal would materially advance the termination of this litigation, because whatever this Court may do, triable issues will remain in the case. The case is ready for trial, and taking these issues now will inevitably lead to a situation where the Parties come back to this Court soon for another round of appeals. And ROSS has not been operational for five years; the Order does not create

3

some imminent threat to ROSS that requires resolution before the trial. The Court is better served by following the finality rule and resolving all of these issues together on a single appeal with a full record.

## STATEMENT OF THE CASE

### I.    ROSS's Copying of Westlaw Content

Westlaw offers subscribers access to a searchable collection of judicial opinions arranged within an original classification system, the West Key Number System ("WKNS").  D.I. 256 ¶¶8-11.  To help researchers better find and understand relevant law, Plaintiffs' attorney-editors add editorial enhancements to Westlaw's collection of judicial opinions, including synopses of cases and headnotes, which identify and synthesize key issues and holdings. *Id.* ¶¶4-6; D.I. 679 ¶¶3-5.  Attorney-editors draft the wording of the headnotes, decide which concepts and points of law to include, make creative choices about which opinions to annotate, how many headnotes to create for a given judicial opinion, and which case passages to link to which headnotes, among other choices.  *Id.* Different legal research platforms do this differently; for instance, LexisNexis provides differently written headnotes in a different number than Westlaw. D.I. 678-07 at 38:20–39:16. West's attorney-editors also decide how to or-

ganize headnotes in the WKNS.  D.I. 679 ¶¶5, 9–10.  This editorial content is used to train Plaintiffs' AI algorithms for Westlaw.  D.I. 256 ¶¶12–13.

ROSS created the for-profit ROSS legal research platform in 2014. D.I. 678-02 at 11:18-12:4.  ROSS admittedly hoped law firms would stop using Westlaw and start using ROSS, and eventually some did.  D.I. 678-02 at 114:25–115:11. To create its platform, ROSS purchased a large set of judicial opinions from Casemaker.  D.I. 678-16 at 239:17–19; 678-25 ¶149.  But that wasn't sufficient to train its algorithm how to answer legal questions.  ROSS wanted *legal analysis*—"legal memos" containing legal questions mapped to relevant passages from judicial opinions. *Id.*; D.I. 678-02 at 275:23–276:12.  Plaintiffs' editorial content was the perfect fit.  After multiple unsuccessful attempts to surreptitiously gain access to Westlaw, ROSS hired LegalEase Solutions ("LegalEase"), a legal process outsourcer, to do it.  D.I. 678-76; 678-54; 678-16 at 101:19-103:5; 678-50; 678-51; 678-31 at 30-90; 678-93; 678-44; 678-71.  LegalEase provided ROSS with 25,000 legal memos that copied extensive editorial content from Westlaw.  D.I. 678-44; 678-36.  ROSS then copied the Bulk Memos (and the Westlaw Content in them) to train, test, and

refine its AI algorithm.  D.I. 678-24 ¶¶25-27; 678-22 ¶¶31-36, 38; 678-62; 678-58; 678-16 at 415:14-21.

## II.    This Lawsuit and Certification

Plaintiffs learned of ROSS's pillaging of Westlaw during a lawsuit against LegalEase. On May 6, 2020, Plaintiffs commenced this lawsuit against ROSS, asserting copyright infringement and tortious interference with contract.  The Parties engaged in extensive discovery, and on December 22, 2022, the Parties moved for summary judgment.  On September 25, 2023, the district court granted in part and denied in part Plaintiffs' motion for summary judgment, but found factual issues for trial on originality and fair use.  App.2.

The Parties readied for trial.  On August 22, 2024, the day before trial was to start, the district court continued trial to permit the parties to renew their summary judgment motions on certain issues.  D.I. 663. On October 1, 2024, Plaintiffs moved for summary judgment on fair use and other affirmative defenses (D.I. 672) as well as direct infringement (D.I. 674). ROSS moved for summary judgment on fair use.  D.I. 676.  On November 5, 2024, the district court ordered a new trial date and scheduled trial to begin on May 12, 2025.  D.I. 722.

On February 11, 2025, the district court granted Plaintiffs' motions for summary judgment on direct infringement and fair use, and denied ROSS's cross-motion. D.I. 770. The Parties readied for trial again. On March 18, 2025, ROSS brought its motion for certification for interlocutory appeal. On April 1, 2025, the parties jointly filed a proposed pretrial order. On April 4, 2025, the district court stayed trial and certified the appeal, while stating that it "remain[s] confident in [its] February 2025 summary judgment opinion." App.1.

## REASONS TO DENY PERMISSION TO APPEAL

## I.   THE DISTRICT COURT'S SUMMARY JUDGMENT ORDER DOES NOT WARRANT AN INTERLOCUTORY APPEAL

Interlocutory appeals are strongly disfavored because they derail the orderly conduct of lawsuits and result in piecemeal and duplicative litigation. *See*, *e.g.*, *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988) (describing the "general antipathy toward piecemeal appeals"); *Link*, 550 F.2d at 863; *In re Semcrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010); *Cf. In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 226 (3d Cir. 1998). Under §1292(b), an interlocutory appeal is permitted only when the order at issue (i) involves a controlling question of law; (ii) to which there exists a substantial ground for difference of opinion; and (iii)

the disposition of which may materially advance the ultimate determination of the litigation. 28 U.S.C. §1292(b); Pet. 8. In addition, entertaining an interlocutory appeal under §1292(b) is appropriate only when the party seeking leave to appeal "establishes [that] exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *Chase Bank, USA N.A. v. Hess*, 2011 WL 4459604, at *1 (D. Del. Sept. 26, 2011) (*quoting In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472–73 (D.Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989)).

Here, the Order does not meet §1292(b)'s stringent requirements.

## A. ROSS Asks this Court to Answer a Question Outside of its Jurisdiction

ROSS asks this Court to find, not just that there were disputed issues of fact, but that ***all*** of Plaintiffs' headnotes are ***unoriginal as a matter of law*** because they all lack "creative spark." Pet. 8. That question is not fairly within the order certified by the district court and would be outside the Court's jurisdiction even were it to accept this appeal. In response to Plaintiffs' motion for summary judgment, ROSS argued that "there is a genuine dispute about how original the headnotes are," and focused on the sufficiency of Plaintiffs' originality evidence in response to

their motion.  D.I. 713 at 2.  Courts of Appeals may not reach outside of the certified order to address other issues.  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).   This Court should not grant interlocutory review to merely decide whether there was a triable fact, but regardless, asking this Court to go ***further*** and affirmatively find for ROSS ***as a matter of law*** on lack of creativity of ***all*** headnotes, when such a motion from ROSS was not the subject of the Order, is impermissible and further counsels denial.

ROSS's evident need to smuggle in issues betrays the infirmity of the Petition and underscores why these issues are not appropriate for immediate review.

### B.    The Order Does Not Involve a "Controlling Question of Law"

Even properly confined to the Order, ROSS cannot meet the requirements for interlocutory appeal.  First, §1292(b) limits interlocutory appeals to the resolution of controlling questions of law, not factual matters.  *Link*, 550 F.2d at 863.  This means pure questions of law, which are "abstract legal issue[s]", "something the court of appeals [can] decide ***quickly*** and cleanly ***without having to study the record***."  *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (Posner, J.)

(emphasis added); Pet. 9.  Appellate courts do not permit interlocutory appeals to review the "***application of law to facts.***"  *In re Essar Steel Minnesota LLC*, 2025 WL 507914, at *5; *McCoy v. Favata*, 2020 WL 5891898, at *2 (D. Del. Oct. 5, 2020) (same).

The issues presented by ROSS are not abstract legal issues; they center on how the law applies to this specific case and necessitate studying the record.  ROSS asks this Court to find **21,787** headnotes are not creative, necessitating a review of the record on those headnotes.  So too for fair use.  As the Supreme Court has held, fair use presents a holistic, context-sensitive inquiry "not to be simplified with bright-line rules[.]" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 20 (2021) (describing the concept of fair use as "flexible" and "its application may well vary depending upon context").  Accordingly, when the district court evaluated the fair use factors, it considered undisputed facts relevant to each factor. App.52–58. Reviewing the district court's legal ***application*** to these fact-based factors is inappropriate for a §1292(b) appeal.  *See E.E.O.C. v. Hora, Inc.*, 2005 WL 1745450, at *3 (E.D. Pa. July 22, 2005) (application of law to the facts at issue was not a "controlling question of law."); *In re Venoco,*

*LLC*, 2019 WL 2117638, at \*3 (D. Del. May 15, 2019); *H. Lundbeck A/S v. Apotex Inc.*, 2019 WL 606466, at \*2 (D. Del. Nov. 15, 2019).

ROSS's arguments in its Petition are unavailing. ***First***, ROSS argues that "Copyright validity is a question of law." Pet. 9. Ownership of a valid copyright in Westlaw, however, is a different question from whether, on the facts of this case, the portions of Westlaw that ROSS copied are copyrightable. ROSS's Petition asks that this Court decide the latter, but doing so would require reviewing what ROSS copied to determine whether it is sufficiently original and whether limiting doctrines (like *scenes-a-faire* or *merger*, which are not certified questions and which ROSS did not ask this Court to look at) apply. *See* App.42.

***Second***, ROSS argues that fair use is a "question of law," but under *Google* it is a "mixed question of law and fact," 593 U.S. at 24, and the context-specific nature of fair use makes it inappropriate for interlocutory appeal, *Moebius v. HB USA Holdings, Inc.*, 2021 WL 9747608, at \*3 (C.D. Cal. Sept. 3, 2021) (application of fair use test was not question of pure law). The fair use factors are fact-dependent, and the Court cannot balance them "quickly and cleanly" without "having to study the record"

11

to understand how each one should weigh, as the district court painstakingly did in its Order. *See Ahrenholz,* 219 F.3d at 677. ROSS's Petition alone devotes **seven pages** to wading through various factors fair use. Pet. 16–25. This demonstrates the fact-dependent nature of the issue. Wading into the application of a multi-factor test is not the Court's role on interlocutory appeal. *Venoco,* 2019 WL 2117638, at *3.

### C.  This Case Does Not Implicate Legal Questions on Which There is Substantial Ground for Difference of Opinion

Next, ROSS must show that "there exists a substantial ground for difference of opinion" with respect to controlling questions of law. §1292(b); *In re TK Holdings*, 2021 WL 3796878, at *3 (D. Del. Aug. 26, 2021). To satisfy this requirement "the difference of opinion must arise out of [a] **genuine doubt as to the correct legal standard**." *In re Physiotherapy Holdings*, 2017 WL 6524524, at *6, *14 (D. Del. Dec. 21, 2017) (emphasis added) (denying motion for leave to file interlocutory appeal) (*citing Hulmes v. Honda Motor Co.,* 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d Cir. 1998)). Mere disagreement with the "application of existing law to the facts of the case" is insufficient. *Hurst*

*v. City of Dover*, 2006 WL 2347707, at *2 (D. Del. Mar. 21, 2006).[1]

**Originality.** There is no doubt about what legal standard applies here.  The standard comes from *Feist*, which held that "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  499 U.S. at 340.  ROSS agrees that is the correct standard.  Pet. 11.  That the district court at first found there was a factual dispute on originality, and then changed its mind, does not show that this standard is in doubt, as ROSS argues.  The district court changed its mind ***not*** because of uncertainty about the correct standard to apply, but because the district court "studied the case materials" more closely.  App.38.  Accordingly, in the portion of the Order on originality, the district court applied the ***same*** legal standard from *Feist* as it had previously, only reaching a different conclusion because of

---

[1] *See also In re ASHINC Corp.*, 2017 WL 2774736, at *4 (D. Del. June 27, 2017); *EMSI Acquisition, Inc. v. RSUI Indem. Co.*, 2018 WL 2316633, at *3 (D. Del. May 22, 2018). ROSS cites *Katz v. Carte Blanche*, but that case barely discusses the standard and does not involve similar issues. 496 F.2d 747 (3d Cir. 1974). *Reese v. BP Exploration (Alaska) Inc.* involved general questions of law. 643 F.3d 681, 687 (9th Cir. 2011).

its reassessment of the facts.  App.42 ("[A] headnote can introduce creativity by distilling, synthesizing, or explaining part of an opinion and thus be copyrightable.  That is why I have changed my mind.").

Citing only three cases, ROSS does not show anything close to disagreement on the standard.  ***First***, ROSS claims that the Order is "wrong" that the headnotes are individually protectable because they "parrot" judicial opinions.  Pet. 13.  But the district court relied on ROSS's own expert's identification of thousands of headnotes that ***were not*** similar to judicial opinions.  App.46-47.  ROSS cites *Matthew Bender & Co. v. West Publ'g Co.*, to try to sow doubt about the standard. 158 F.3d 674, 680 (2d Cir. 1998).  *Id.*  But that case unremarkably applied the ***same standard*** but to materially ***different facts***.[2]  *Id.*  This is no basis for an immediate appeal under §1292(b).  *See Physiotherapy Holdings*, 2017 WL 6524524, at *13.[3]

---

[2] ROSS argues "'industry conventions' and functionality" dictate how the headnotes are written. Pet. 14.  Not so.  Plaintiffs' competitors select different headnotes and write them differently. *See, e.g.*, D.I. 678-7 at 38:8-12, 38:20-39:17.  *Banks v. Manchester*, is irrelevant because it involved judicial decisions, not editorial content.  128 U.S. 244 (1888).  *Worth v Selchow & Righter Co.*, is inapposite because it predates *Feist*.  827 F.2d 569 (9th Cir. 1987).

[3] Professor Brian Frye has moved to file an amicus brief on originality,

**Second**, ROSS claims the headnotes are not protectable as a compilation of fact. Pet. 13. That is doubly wrong. Headnotes are editorializations, not facts. Regardless, under black-letter copyright law, original compilations of facts are protected. *Feist*, 499 U.S. at 348. ROSS does not cite anything otherwise. The standard here, too, is not in doubt.

**Fair Use.** The fair use standard is also well-established by extensive case-law applying the four factors. ROSS argues there is doubt here because in *American Geophysical Union v. Texaco Inc.* the court found "the decisions of the Supreme Court on fair use have not formulated a clear framework or standard governing future cases." 802 F. Supp. 1, 30 (S.D.N.Y. 1992); Pet. 15.[4] But since that case was decided in 1992, the Supreme Court articulated the fair use framework clearly in *Campbell*, 510 U.S. at 569; *Google*, 593 U.S. 1; and most recently, in *Andy Warhol Found.*, 598 U.S. at 508.

ROSS's other arguments are meritless. **First**, ROSS argues that

---

but that brief discusses the merits of originality, not the §1292(b) standard, so it does not bear on the Petition. Regardless, it relies on the ***same*** *Feist* standard.

[4] That case is different because the parties agreed appeal would "make overall settlement likely," there was "no controlling precedent," and trial could last months. *Am. Geophysical Union,* 802 F. Supp. at 29–30.

fair use is a "flexible" concept. Pet. 16. Flexibility does not mean doubt. The context-dependent nature of fair use is actually a reason to decline to take this appeal, because it shows this is not a controlling question of law. *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003) ("Where the crux of an issue decided by the Court is fact-dependent, the Court has not decided 'a controlling question of law' justifying immediate appeal").

**Second**, ROSS argues that the district court applied different standards of transformativeness and market harm in its two summary judgment opinions. Pet. 16. Not so. The district court applied *Warhol* and other Supreme Court precedent in both. App.51–58. The difference between the two opinions stemmed from the district court's reassessment of the record and what it believed to be triable disputes. App.57. The district court's reevaluation of the "existence, or nonexistence, of a triable issue of fact" is not appropriate for interlocutory review. *Johnson*, 515 U.S. at 316.

**Third**, ROSS spends seven pages on the merits of fair use, but these arguments only reflect its disagreement with how the district court

***applied agreed-upon law*** to the specific facts of this case, which is insufficient. *See McCague v. Trilogy Corp.*, 2007 WL 9811124, at \*2 (E.D Pa. Apr. 10, 2007); *Lenz v. Universal Music Corp.*, 2008 WL 4790669, at \*2 (N.D. Cal. Oct. 28, 2008).

On transformativeness (factor 1), for example, although ROSS claims that the district court "disclaimed any possibility of transformative intermediate copying," Pet. 17, the district court announced no such rule. It said "ROSS is right that intermediate copying has been permitted under fair use factor one." App.53. The specific facts of ROSS's copying were what the district court explained made it different from intermediate copying cases. App.54.[5]

On market harm (factor 4), ROSS claims that the district court should not have considered the "hypothetical market" for Westlaw content. Pet. 19–20. But the district court found that the market for AI

---

[5] ROSS claims the district court did not adequately engage with *Warhol* or consider the purpose of the use, Pet. 18, but that is simply not true. Order at 19 (*citing Warhol* and describing ROSS's "purpose"). ROSS also asserts that because lawyers have been using Westlaw for over a century, ROSS's copying is similar to *Google* where the copying enabled programmers to use code they "have already learned to work with." Pet. 20. This is nonsensical. ROSS did not do anything remotely like using well-known API declarations to allow its users to write new programs, as in *Google*.

training data is a reasonable "potential market." App.57. In doing so, it applied the Supreme Court's holding in *Campbell* that factor four requires consideration of the "***potential*** market" for a copyrighted work. 510 U.S. at 577–78. ROSS does not cite any case law showing this Supreme Court precedent is in doubt, it just disagrees with the district court's conclusion as to how that law applies here.

Similarly, on public benefit (factor four), ROSS does not argue that the Court applied the wrong law on public benefit or that there is legal disagreement about how public benefit should apply. Instead, it argues that ROSS's legal research product provides a sufficient public benefit weighing in favor of fair use. The district court found that there is "some public benefit" from accessing the law, but legal opinions are already available for free, and "the public's interest in the subject matter is not enough." App.58. Moreover, there is a countervailing public benefit to protecting Plaintiffs' rights; ROSS's product actually disrupts the existing market conditions that encourage the creation of editorial content and algorithms trained on that content. *See Am. Geophysical Union*, 802 F. Supp. at 27. But in any case, its mere disagreement with the district court does not justify an interlocutory appeal.

18

Likewise, on amount and substantiality (factor three), ROSS merely disagrees with the district court's application of the law, not the legal standard.  It quibbles that the district court "deemphasized" the percentage copied, but ROSS ignores the fact that each headnote is individually protectable, over 2,000 of them (at least) were copied entirely.[6] Pet. 22. Moreover, the district court relied on settled copyright law holding that even small takings can be qualitatively significant.  App.56; *Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 587 (1985).  ROSS claims that *Google* shows the amount copied plays a central role in fair use, but there the "large" amount of copying favored fair use because it was for a transformative purpose.  593 U.S. at 33–34.  Here, the district court concluded there was no transformative purpose. None of this shows that the legal standard is in doubt.

ROSS also does not identify a difference of opinion as to how the fair use factors should be weighed.  It argues that it was improper for the district court to weigh the first and fourth factors most heavily, and that

---

[6] ROSS's claim that there is a small amount of copying here only accounts for a subset of the bulk memos—but ROSS is responsible for LegalEase's copying of ***hundreds of thousands*** of editorially enhanced Westlaw cases.  D.I. 673 38–39.

it rigidly treated fair use like a "score card." Pet. 21. But the district court weighed all the factors "together," and found that "[f]actor two matters less than the others, and factor four matters more." App.58. The Supreme Court held that fourth factor is "undoubtedly the single most important element of fair use." *Harper* 471 U.S. at 566. The second factor, by contrast, "has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015). On the first factor, the Third Circuit in *Murphy v. Millennium Radio Group LLC* found commerciality strongly weighed against fair use. 650 F.3d 295, 308 (3d Cir. 2011). Again, there is no legal standard in doubt.

### D.    Immediate Appeal Will Not Materially Advance Determination of this Dispute

Finally, to satisfy §1292(b), ROSS must also show the disposition of the appeal "may materially advance the ultimate termination of the litigation." *TK Holdings*, 2021 WL 3796878, at *3. "[W]here triable issues would remain even after a successful appeal, courts routinely deny certification of §1292(b) appeals because such an appeal will not materially advance the ultimate termination of the litigation." *U.S. v. Exide Corp.*, 2002 WL 992817, at *2 (E.D. Pa. 2002). Courts also decline review where

litigation is already in an advanced state, as granting the appeal will not materially advance the litigation. *See, e.g., Gialde v. Time, Inc.*, 480 F.2d 1295, 1301 (8th Cir. 1973); *Averhart v. Commc'ns Workers of Am.*, 2016 WL 1162628, at *2 (D.N.J. Mar. 24, 2016); *Shurance v. Plan. Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988); *Rimini St., Inc. v. Oracle Int'l Corp.*, 2021 WL 4037482, at *7 (D. Nev. Sept. 2, 2021).  Both circumstances apply here.

This case has been pending for five years, discovery is complete, and the parties are ready for trial.  That alone warrants denial.  Even more significant, a trial will take place regardless of how ROSS's appeal is decided.  Even if the Court rules for ROSS on ***both*** questions, tortious interference with contract, which involves a highly overlapping set of facts, will still be tried.  On originality, even if the Court goes as far as ROSS wants it to go and finds all of the headnotes are unoriginal, there will ***still*** be a copyright infringement trial on other content that was copied.[7]

---

[7] ROSS asserts in pre-trial submissions that the Order left open the question of whether indirect infringement is fair use.  Not so, as Plaintiffs moved for and the district court granted summary judgment on ROSS's fair use defense *in toto*, but if it were true, it would make immediate appeal ***even less*** appropriate, as no matter what, according to ROSS, a fair use trial will happen.

If, after this case is tried, ROSS takes issue with the trial result, it will be able to—and almost certainly will—file yet another appeal. Accordingly, it is inevitable that there will be *another* appeal of this case to this Court very soon in the future. An interlocutory appeal here would lead to the "piecemeal appeals" that this Court discourages. *In re White Beauty View, Inc.*, 841 F.2d at 526.

ROSS's arguments are meritless. *First*, ROSS argues that this appeal will simplify the trial because it currently involves "myriad copyright issues." Pet. 24–25. But the issues currently slated for trial (tortious interference and indirect infringement) are not "complex." Trial is only five days long. To streamline the case, Plaintiffs are not seeking damages for direct infringement beyond the 2,243 headnotes copied in the Bulk Memos, so the only question for the jury will be which headnotes are still within the copyright term, which is a relatively simple issue. On indirect infringement, the copying was done *verbatim*, and therefore does not require the same substantial similarity analysis as direct infringement did. And indirect infringement damages were not calculated on a headnote-by-headnote basis, so this also eases the burden on the jury. It's unclear why any burden on the jury would be less significant if

the trial was focused only on tortious interference.  Pet. 24.

*Second*, ROSS argues, relying on *Katz*, that §1292(b) should be applied to "[avoid] possibly wasted trial time and litigation expense."  496 F.2d at 756.  But both trial, and a later appeal, are inevitable, so allowing an appeal at this juncture merely adds both time and expense.

*Third*, ROSS argues that, as "the person most familiar with the litigation," the district court is entitled to deference on its decision to certify.  Pet. 23.  The Third Circuit has not endorsed this view, and indeed, it makes no sense for this Court to have to defer on whether it should take an appeal.  *Link* shows this Court's own §1292(b) analysis is crucial.  And ROSS relies on Wright & Miller for this point, but that treatise merely explains how the district court's consent is required first. Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3929 Permissive Interlocutory Appeals—Section 1292(b) (3d ed.).

*Fourth*, ROSS argues that immediate appeal is "typical" for orders eliminating a theory of liability or defense that will vitiate the need for a "long trial that results in damages."  Pet. 23–24.  This is demonstrably wrong and the same could be said of virtually *every* denial of a motion to dismiss or summary judgment—immediate appeals are disfavored and

granted sparingly. *Milbert*, 260 F.2d at 433.

## II.    ROSS HAS NOT SHOWN EXCEPTIONAL CIRCUMSTANCES

ROSS cannot point to exceptional circumstances justifying immediate appeal, as is also required. ROSS asserts this appeal would answer "the question of how copyright law applies to artificial intelligence innovation," but this just shows ROSS really wants a review of the ***application*** of settled law to fact. Pet. 25. It's also not true. The district court did not purport to resolve the question of how copyright law applies to use of works by AI systems in ***all*** scenarios. It issued a measured opinion that applied accepted standards to the specific, undisputed facts of ***this case***. It went out of its way to twice note that this case does ***not*** concern generative AI.

ROSS attempts to manufacture a sense of urgency by insisting fair use here is a "matter of national security." Pet. 25–26. All ROSS cites for this overblown claim is ***one*** comment from a ***single*** AI company. Pet. 26. ROSS's product has nothing to do with national security. The idea that enforcing the law in ***this*** case—which involves a decade-old non-generative legal search tool, a defendant that has not done business for

years, and copying to create a directly competitive, substitutive commercial product—somehow puts the United States at risk of losing the "race for AI" is absurd and unsupported. It is particularly absurd because Plaintiffs themselves are major contributors to AI development, and protecting their content is precisely what enables that development. This Court should not throw by the wayside settled United States copyright law and ignore the limitations set by §1292(b) to benefit ROSS.

## CONCLUSION

The Court should deny the petition for interlocutory appeal.

Dated:  April 24, 2024          Respectfully submitted,

                                */s/ Dale M. Cendali*
                                Dale M. Cendali
                                Joshua L. Simmons
                                Kirkland & Ellis LLP
                                601 Lexington Ave.
                                New York, NY 10022
                                Tel: (212) 44604846

                                Miranda D. Means
                                Kirkland & Ellis LLP
                                200 Clarendon Street
                                Boston, MA 02116
                                Tel: (617) 385-7500

                                *Attorneys for Plaintiffs-Respondents*
                                *Thomson Reuters Enterprise Centre*
                                *GmbH and West Publishing Corporation*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 5(c)(1), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 5,200 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Century Schoolbook.

Dated:  April 24, 2024          */s/ Dale M. Cendali*
                                Dale M. Cendali